1

2                    **UNITED STATES DISTRICT COURT**

3                          **DISTRICT OF NEVADA**

4

5   Avihou Mishniot,                              2:16-cv-01061-JAD-PAL

6           Plaintiff                    **Order Granting Defendants' Motion to
                                                        Dismiss**
7   v.
                                                    [ECF No. 18]
8   International Recovery Systems Ltd., doing business
9   as National Recovery Systems,

10          Defendant

11

12         Defendant National Recovery Systems ("NRS") sent plaintiff Avihou Mishniot a letter asking

13   him to pay an old gambling debt.  Mishniot believed that, in sending this letter, NRS violated the

14   Fair Debt Collection Practices Act ("FDCPA"), so he brought this case.  I dismissed Mishniot's first

15   complaint because he failed to allege sufficient facts to support his claims.  He filed an amended

16   complaint with a single claim under the FDCPA, and NRS moves to dismiss once again.

17         Mishniot still fails to sufficiently allege his claims.  He has not properly alleged that NRS is a

18   debt collector under the FDCPA and that is reason enough to dismiss his complaint.  But even if he

19   had, Mishniot has not alleged that he suffered an injury concrete enough to confer standing on him.  I

20   thus grant NRS's motion to dismiss—this time with prejudice.[1]

21                                    **Discussion**

22   **A.     Motion-to-dismiss standards**

23         A properly pleaded complaint must contain a "short and plain statement of the claim showing

24   that the pleader is entitled to relief."[2]  While Rule 8 does not require detailed factual allegations, it

25   demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of

26   _____

27   [1] I find this motion suitable for disposition without oral argument.  Nev. L.R. 78-1.

28   [2] FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

action."[3]  "Factual allegations must be enough to rise above the speculative level."[4]  To survive a motion to dismiss, a complaint must "contain [] enough facts to state a claim to relief that is plausible on its face."[5]

**B.**     **Mishniot fails to plausibly allege that NRS is a debt collector.**

To proceed with his claim under the FDCPA, Mishniot must adequately allege that NRS is a "debt collector" under that act.[6]  A company can be a debt collector in two ways: (1) if "the principal purpose of [its business] is the collection of debts," or (2) if the company "regularly collects" debts on behalf of another.[7]  Coupled with Rule 8's pleading standard, Mishniot must therefore allege specific facts to support a plausible inference that NRS meets one of these definitions.[8]  It is widely recognized in this circuit that it is not even enough to merely include in the complaint a "conclusory allegation . . . that the principal purpose of [the defendant's business] is to collect on debts."[9]

---

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Twombly*, 550 U.S. at 555.

[5] *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

[6] *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208–09 (9th Cir. 2013).

[7] 15 U.S.C. § 1692a(6).

[8] *Id.*; *Mannello v. Residential Credit Sols., Inc.*, No. 215CV07674CASAJW, 2016 WL 94236, at *5 (C.D. Cal. Jan. 7, 2016); *Tuck v. Guardian Prot. Servs., Inc.*, No. 15-CV-1376 JLS (JLB), 2016 WL 4705457, at *5 (S.D. Cal. Sept. 8, 2016).

[9] *Hundal v. Eagle Vista Equities, LLC*, 2016 WL 4585772, at *6 (N.D. Cal. Sept. 2, 2016); *see also Mannello*, 2016 WL 94236, at *5 ("[D]efendant correctly notes that the FAC 'does not plead one single underlying fact to support a plausible inference that RCS' principal business purpose is to collect debts."); *Tuck*, 2016 WL 4705457, at *5 ("Consequently, 'the complaint's factual matter, viewed in the light most favorable to [plaintiff], establishes only that debt collection is some part of [defendant]'s business, which is insufficient to state a claim under the FDCPA."); *Curten v. Quality Loan Serv. Corp.*, 2015 WL 4464581, at *5 (C.D. Cal. July 21, 2015) ("The second amended complaint alleges that defendants are debt collectors because they 'received an assignment or transfer of a mortgage while the debt was in default.' Absent additional facts concerning the nature of defendants' respective businesses, Curten has not adequately pled that they are debt collectors, and his FDCPA claim fails."); *Zinni v. Jackson White, PC*, 565 F. App'x 613, 616 (9th Cir. 2014) ("Plaintiffs' complaint alleges that Defendants fall within the statutory definition of 'debt collectors' because they 'regularly collect[ ] or attempt[ ] to collect, directly or indirectly, debts owed or due or

Mishniot provides no specific facts to support NRS's debt-collector status under either theory. His allegations about NRS's business consist of two conclusory statements: (1) "NRS's principal purpose is purchasing defaulted consumer debts from original creditors, then collecting those purchased debts for profit"; and (2) "NRS regularly collects or attempts to collect consumer debts that were either assigned to NRS, or that NRS services on behalf of original creditors."[10] These statements are nothing more than conclusory statements of law shrouded as facts, so I need not credit them. The best inference I can make from the complaint is that NRS has attempted to collect on one debt: Mishniot's—and that is not enough. I cannot plausibly infer that NRS's principal business is debt collection, nor can I infer that NRS regularly attempts to collect on others' debts. I thus dismiss Mishniot's complaint.

**C.   In the alternative, Mishniot has not alleged that he has suffered a concrete harm that gives him standing to bring this claim.**

Mishniot contends that when NRS sent him a single letter asking him to pay a debt, it caused him an injury sufficient to confer federal-court standing. The Article III injury requirement "functions to ensure . . . that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake."[11] The plaintiff must show that he was injured in a concrete way.[12] Although a concrete injury need not be a tangible one,[14] the "plaintiff must allege

---

asserted to be owed or due another . . . . But the 'complaint makes no factual allegations from which we could plausibly infer that [Defendants] regularly collect[ ] debts owed to someone other than [Defendants].'"); *Amelina v. Manufacturers & Traders Trust Co.*, 2015 WL 7272224, at *7 (S.D. Cal. Nov. 17, 2015) ("Alleging that 'as part of its principal business [M&T] purchases large batches of defaulted mortgage loans which it thereafter attempts to collect on, foreclose, or redeem with Housing and Urban Development for cash payment' is insufficient to show that debt collection is M&T's principal business purpose, not merely a part of its business purpose.").

[10] ECF No. 16 at 2.

[11] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 191 (2000).

[12] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–61 (1992).

[14] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

facts, not mere legal conclusions, in compliance with the pleading standards established by *Bell Atlantic Corp. v. Twombly*."[15]

The Supreme Court has offered two additional guideposts for determining whether an intangible harm should be viewed as a concrete injury for purposes of Article III.   First, Congress can "identify intangible harms that meet minimum Article III requirements."[16]   Although Congress does not automatically create standing merely by giving the public a right to sue when a defendant violates a statute, Congress's decision to protect against a certain injury can indicate that this injury is concrete for purposes of Article III.[17]   Second, courts consider history: whether "an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."[18]   If a plaintiff alleges that the defendant's violation of a statute caused a harm similar to a traditional, concrete injury, the plaintiff likely has Article III standing.[19]

None of Mishniot's allegations plausibly suggests that he was concretely injured when NRS sent him a single letter asking that he pay a debt.   Mishniot's allegations about his injury consist of a sentence stating that NRS's letter caused him "embarrassment, frustration, personal humiliation, mental anguish, and anger."[20]   But these, too, are merely conclusory allegations devoid of any supporting facts—so I need not credit them.   And even if I did, these harms are not enough. Mishniot offers no authority or analysis to suggest that Congress identified new concrete injuries in passing the FDCPA so that NRS's alleged violations of that statute are enough on their own.   Nor has he shown that these harms are analogous to traditionally-recognized injuries.

---

[15] *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] ECF No. 21 at 12–13.  Mishniot also argues that he has been concretely injured because he has incurred attorney's fees in bringing this case, but he cites no authority suggesting that self-imposed attorney's fees incurred to vindicate a bare procedural violation confers standing.

1    Mishniot also cites (without much explanation) to cases addressing standing under the

2    Telephone Consumer Protection Act ("TCPA").[21]  These cases have held that violating the TCPA by

3    harassing consumers with robodialers creates a concrete injury on its own.[22]  I assume Mishniot

4    meant to make the same argument with respect to violations of the FDCPA.  But these TCPA cases

5    are specific to the TCPA.  Those courts explained that, in passing the TCPA, Congress identified

6    robocalls as a concrete injury to consumers that it meant to curb.[23]  And courts have emphasized that

7    robocalls create harms that are similar to traditional injuries: they invade plaintiffs' privacy, rack up

8    their cell phone bills, and interrupt the plaintiffs' business and personal interactions.[24]  Mishniot does

9    not explain how his harms are analogous to these congressionally recognized harms.[25]

10   **D.      I dismiss with prejudice.**

11   "[L]eave to amend should be granted if it appears at all possible that the plaintiff can correct

12   the defect," particularly if the plaintiff has not already been given a chance to amend.[26]  That said,

13   "futile amendments should not be permitted."[27]  When I dismissed Mishniot's first complaint, I told

14   him that I would give him one more chance to sufficiently allege his FDCPA claim.  And he was

---

[21] *See Haysbert v. Navient Sols., Inc.*, No. CV 15-4144 PSG (EX), 2016 WL 890297, at *5 (C.D. Cal. Mar. 8, 2016); *Mey v. Got Warranty Inc.*, 5:15-cv-00101-JPB-JES (N.D. Wv. Jun. 30, 2016). Also, these cases were decided before the Supreme Court clarified what a concrete injury is in *Spokeo*.

[22] *LaVigne v. First Cmty. Bancshares, Inc.*, 2016 WL 6305992, at *5 (D.N.M. Oct. 19, 2016) ("Unlike the FCRA, there is no 'gap' where some violations of the TCPA result in the harm Congress intended to curb, and some do not.  Rather it is the 'receipt of unsolicited telemarketing calls that by their nature invade the privacy and disturb the solitude of their recipients.").

[23] *Id.*

[24] *Id.*

[25] Even if Mishniot had adequately raised this argument it would lose.  A violation of the FDCPA does not automatically create a concrete injury.  *Perry v. Columbia Recovery Grp.*, 2016 WL 6094821, at *6 (W.D. Wash. Oct. 19, 2016).  Assuming that NRS failed to disclose information about Mishniot's rights to challenge his debt or lied to him about whether it would report him to the IRS, Mishniot has not alleged that this caused him any harm.  For example, he does not allege that he did not owe the debt, that he would have challenged the debt, or that he would have done anything else differently had he been properly informed of his rights.  *See id.*

[26] *Balisteria v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1990).

[27] *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th Cir. 1987) (quotations omitted).

well aware before filing his amended complaint that NRS was questioning his standing to bring this claim.[28]  Although Mishniot added a couple bare allegations, his complaint remains insufficient. Because I have already given him a chance to fix the deficiencies in his complaint, and because there is no indication that Mishniot could allege additional facts to cure these deficiencies, I dismiss his complaint with prejudice.

### Conclusion

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendant's **motion to dismiss [ECF No. 18] is GRANTED.  This action is DISMISSED with prejudice. The Clerk of Court is directed to CLOSE THIS CASE.**

Dated this 22nd day of February, 2017

_____
Jennifer A. Dorsey
United States District Judge

---

[28] NRS raised standing when it argued its first motion to dismiss Mishniot's original complaint.